3:25-mj-00089

**DISTRICT OF OREGON, ss:**                               **AFFIDAVIT OF NATHAN HIBBS**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Nathan Hibbs, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Task Force Officer (TFO) for the Federal Bureau of Investigation and have a special deputation to investigate and enforce violations of Title 18 and Title 21 of the United States Code, which includes firearm and controlled substances offenses. I am a Police Detective employed by the City of Gresham Police Department, assigned as a criminal investigator to the Gresham Police Department (GPD) Investigations Division. I am a sworn police officer and have been for more than 19 years. I am currently assigned to the Multnomah County Sherriff's Office's (MCSO) Special Investigations Unit (SIU) investigating narcotics related crimes. I have conducted multiple investigations into weapons offenses and drug trafficking offenses. Through this training and experience, I have become familiar with the manner in which drug traffickers operate to carry out their criminal activity.

2. I submit this affidavit in support of a criminal complaint and arrest warrants for Alixon Vladimir Medina Varela (**MEDINA**), d.o.b. 12/xx/1994, for committing the offense of Possession with Intent to Distribute 40 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance, all in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B) (hereinafter the Target Offense). As set forth below, there is probable cause to believe, and I do believe, that **MEDINA** committed the Target Offense.

///

///

**Affidavit of Nathan Hibbs**                                                                                         Page 1

**Applicable Law**

3.      21 U.S.C. § 841(a)(1) makes it unlawful for any person to knowingly or intentionally possess with intent to distribute or distribute a controlled substance.

**Statement of Probable Cause**

4.      On March 31, 2025, as part of an ongoing fentanyl investigation, SIU investigators were conducting surveillance on a suspect when he drove to the parking lot of Walmart in Wood Village, Oregon. At that location investigators observed the suspect meet briefly with a Hispanic male who had arrived at that location in a gold-colored Toyota Corolla. The Hispanic male and the suspect met briefly in close proximity and it appeared as if they had conducted a hand-to-hand drug transaction within the parking lot.

5.      As part of the investigation, later that same day on March 31, 2025, Investigators executed a search warrant on the suspect's residence and he was detained. While the suspect was in custody, I advised the suspect of his constitutional *Miranda* rights and the suspect agreed to talk with me. The suspect admitted buying, selling, and using fentanyl. The suspect also agreed to cooperate with law enforcement in hopes of receiving consideration on potential charging or sentencing consideration. No promises were made to the suspect regarding the extent of any potential charging or sentencing considerations. The suspect, who at this point became a cooperating suspect (CS), has prior felony convictions for delivery of heroin. The CS told me he had been purchasing fentanyl from a Hispanic male he knows as "Wuero," later identified as **MEDINA**. The CS told me he had been purchasing fentanyl from "Wuero" for about two or three months. The CS told me he calls and texts the cell phone number 503-xxx-2552 to contact "Wuero" and arrange to purchase fentanyl. The CS told me during the time he was purchasing

**Affidavit of Nathan Hibbs**                                                                                                                    **Page 2**

fentanyl from "Wuero" he purchased fentanyl from him either every day or every other day. The CS said he usually bought 3 to 6 grams at a time but that on two occasions he had purchased two ounces of fentanyl from "Wuero" that he turned around and sold to another individual. The CS stated he has purchased approximately 14 ounces of fentanyl from "Wuero" over the past two to three months.

6. The CS provided me with the swipe code for his phone, which I then unlocked. On the CS's phone, he showed me text message conversations with the contact "Wwuero," which were associated with the cell phone number 503-xxx-2552. The text message tread began on March 15, 2025. The first message was "New number" "Wuero." The CS explained that his fentanyl supplier regularly changed his phone number. I reviewed dozens of messages and saw they related to the CS purchasing fentanyl from "Wuero" and they contained dollar amounts and locations where the deals would occur.

7. I asked the CS about meeting with the person at the Walmart parking lot. The CS told me he had purchased fentanyl from the man investigators observed him meet with. The CS told me the man he met with was the man he knew as "Wuero."

8. On April 1, 2025, using the CS's cell phone, I sent text messages to 503-xxx-2552 requesting to purchase two ounces of fentanyl. I received reply messages where the person agreed to sell me the fentanyl and that the price would be $1,500. I was also directed to go to the area SE 167th and E. Burnside Street, in Portland, Multnomah County, Oregon to purchase the fentanyl. SIU Investigators traveled to that location and waited.

9. A short time later an SIU investigator observed a gold Toyota Corolla parked on SE 166th and SE Ankeny, approximately two blocks from the buy location, with a male inside it. This was the same gold Toyota Corolla the Investigator observed the previous day in the Walmart

**Affidavit of Nathan Hibbs**                                                                                             **Page 3**

parking lot.  The investigator also confirmed it was also the same male he had seen meet with the CS the previous day.  It should be noted the CS had confirmed that the person he met with in the Walmart parking lot was his fentanyl supplier.

      10.      I directed investigators to contact and detain the person, which they did.  The driver and sole occupant of the gold Toyota Corolla was later identified as Alixon Vladimir Medina Varela (**MEDINA**).  **MEDINA** was detained.  On the driver's seat was located a small bag of what appeared to be powdered fentanyl inside a clear plastic bag.

      11.      Investigators searched the gold Toyota Corolla and located six additional packages of suspected fentanyl, some of which were concealed in the vehicle under the steering column and under the hood in the air cleaner.  The seized fentanyl is depicted below:



      12.      An FBI Special Agent, who is a native Spanish speaker, arrived at our location and interviewed **MEDINA** in Spanish.  **MEDINA** was advised of his constitutional *Miranda* rights in Spanish and acknowledged understanding his rights.  **MEDINA** agreed to talk. **MEDINA** said he was from Honduras and that he was selling fentanyl to support his two daughters back home.  **MEDINA** told investigators he sold ounces of fentanyl for $600. **MEDINA** told investigators his fentanyl supply was concealed within his vehicle.  **MEDINA**

**Affidavit of Nathan Hibbs**                                                                                                  **Page 4**

declined to consent to search his residence or cellphones.  I showed **MEDINA** a picture of the CS and **MEDINA** identified the CS as fentanyl customer who bought small amounts of fentanyl.  **MEDINA** admitted to selling fentanyl to the CS the previous day at Walmart.

        13.       The fentanyl was seized and transported to the SIU office where investigators used a Mobile Detect presumptive test on a sample of the suspected fentanyl and the test indicated a presumptive positive for fentanyl, a Schedule II controlled substance.  I have found that the Mobile Detect field test is a reliable method for testing controlled substances with subsequent forensic analysis repeatedly confirming the field test results.  Investigators also weighed the fentanyl seized from the vehicle and saw it weighed approximately 140.5 gross grams, with the plastic bags.

        14.       I know that fentanyl is a Schedule II controlled substance and an extremely powerful synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin.  I know that 2 mg. of fentanyl can be a potentially fatal dose.  I know that fentanyl traffickers regularly buy and sell bulk fentanyl powder.  I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills that they will then burn it on a piece of tin foil and inhale the fumes.  Sometimes a user will simply ingest the pills or inhale the powdered fentanyl.  I know that fentanyl addicts on the street do not regularly stockpile large amounts of fentanyl but rather tend to buy a small amount of what they need and then resupply themselves when they run out.  I know that a user of powdered fentanyl will use it in quantities of less than 1/10 of a gram and will regularly buy it in amounts of less than a gram up to a couple of grams at a time.  I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities of a gram or less.  I know that a person possessing over 100 grams of fentanyl powder does not possess the powder

**Affidavit of Nathan Hibbs**                                                                                                              **Page 5**

for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

## Conclusion

15. Based on the foregoing, I have probable cause to believe, and I do believe, that Alixon Vladimir Medina Varela (**MEDINA**) committed the felony offense of Possession with Intent to Distribute 40 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance, all in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B) (the Target Offense). I therefore request that the Court issue a criminal complaint and arrest warrant for **MEDINA** for committing the Target Offense.

16. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin, and AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

<u>*By phone pursuant to Fed R. Crim. P. 4.1*</u>
Nathan Hibbs, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  3:16 pm  on April  2 , 2025.

*Youlee Yim You*
HONORABLE YOULEE YIM YOU
UNITED STATES MAGISTRATE JUDGE

**Affidavit of Nathan Hibbs**                                                                                                          **Page 6**